298 Ga. 314
FINAL COPY

S15A1365. SIMPSON v. THE STATE.

BLACKWELL, Justice.

Joshua Samuel Simpson was tried by a Walker County jury and convicted of murder and aggravated assault, both in connection with the killing of Michael Wyscaver. Simpson appeals, contending that the evidence is legally insufficient to sustain his convictions, that the trial court erred both when it admitted certain photographs of the victim and when it charged the jury, and that he was denied the effective assistance of counsel. Upon our review of the record and the briefs, we conclude that the aggravated assault should have merged with the murder, and so, we vacate the separate conviction and sentence as to aggravated assault. We see no other error, however, and we otherwise affirm the judgment of the trial court.[1]

_____

[1] Wyscaver was killed in August 2008. Simpson was indicted on November 3, 2008 and charged with malice murder, felony murder, and aggravated assault. His trial commenced on December 8, 2009, and the jury returned its verdict three days later, finding him not guilty of malice murder and guilty on both of the other counts. Simpson was sentenced to imprisonment for life for felony murder and a concurrent term of imprisonment for twenty years for aggravated assault. Simpson timely filed a motion for new trial on December 11, 2009, and he amended it on August 3, 2011, again on August 15, 2012, again on December 12, 2012, again on February 4, 2013, again on April 15, 2013, and yet again on June 12,

1. Viewed in the light most favorable to the verdict, the evidence shows that Wyscaver's decomposing body was found in an abandoned house on August 29, 2008. Prior to the discovery of his body, his conservator had not seen or heard from Wyscaver for a couple of weeks. A forensic examination indicated that Wyscaver had died of blunt force trauma to his head. A computer monitor, a computer tower, and some two-by-four pieces of wood were lying on the floor next to his body.

Soon after the discovery of the body, police officers interviewed Simpson, who was an acquaintance of Wyscaver. Simpson admitted that about two weeks earlier, Wyscaver had suggested that they look in the abandoned house for items they could sell. When Simpson bent over to pick something up, Wyscaver approached him from behind, placed one hand on his shoulder and one hand on his lower stomach, and said that they could "do something to have fun together." Simpson said that he "freaked out" as a result of these advances, punched Wyscaver in the face, grabbed a two-by-four, and began hitting Wyscaver in the

2013. The trial court denied his motion on January 20, 2015. Simpson timely filed a notice of appeal to the Court of Appeals on January 28, 2015, and the case was transferred to this Court on March 25, 2015, where it was docketed for the September 2015 term and submitted for decision on the briefs.

head with it. When the wood broke, Simpson picked up a computer tower and struck Wyscaver in the head with it. Simpson claimed that Wyscaver then tried to get back up, so Simpson hit Wyscaver in the head with the computer monitor and fled the scene. In the days following the attack, Simpson did not return to the abandoned home, fearing that he would find Wyscaver dead. Simpson confided in his uncle that he had been in a fight with Wyscaver at the abandoned house and had hit him with a computer.

Simpson claims that the evidence is not sufficient to prove beyond a reasonable doubt that he was the person who committed any of the crimes charged. But his statement was corroborated by police investigators, the medical examiner, and Simpson's uncle. See Wise v. State, 292 Ga. 447, 449 (1) (738 SE2d 580) (2013). Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence was more than sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Simpson was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[2]

---

[2] Simpson also argues that the trial court should have exercised its discretion to grant a new trial, and this Court should now do so, because the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, and because the verdict is

2. Simpson contends that the trial court erred when it admitted certain photographs of the victim as evidence because their probative value was outweighed by their prejudicial effect. Some of the photographs to which Simpson objects show Wyscaver's body at the scene of the crime, and others show the body just before the autopsy. Those crime-scene and pre-autopsy photographs were properly admitted into evidence "to show the nature and extent of the wounds and the location of physical evidence at the scene, as well as to assist the testimony of the medical examiner." Leslie v. State, 292 Ga. 368, 372 (5) (738 SE2d 42) (2013). See also Wilcher v. State, 291 Ga. 613, 614 (2) (732 SE2d 81) (2012).

The remaining photographs in question show Wyscaver's skull after all the soft tissue had been removed. "As we have explained, a photograph that

_____

"decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. This Court, however, does not have the authority and discretion to grant a new trial on these grounds, commonly known as the "general grounds." Slaton v. State, 296 Ga. 122, 125 (2) (765 SE2d 332) (2014) (citation omitted). As an appellate court, we cannot consider whether the verdict is consistent with the weight of the evidence or the principles of justice and equity, and our review is limited instead to the legal sufficiency of the evidence. See Cotton v. State, 297 Ga. 257, 258 (1) (773 SE2d 242) (2015). Furthermore, even when asked "to review a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in Jackson v. Virginia, supra." Allen v. State, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (punctuation omitted). And as already explained, the evidence in this case meets that standard.

depicts the victim after autopsy incisions is admissible when necessary to show some material fact which becomes apparent only because of the autopsy." McKibbins v. State, 293 Ga. 843, 852 (5) (750 SE2d 314) (2013) (citation and punctuation omitted). In this case, the record includes eighteen post-autopsy photographs of Wyscaver's skull, but only six of them — which Simpson conceded were not duplicative — were admitted into evidence and presented to the jury. See Stewart v. State, 286 Ga. 669, 670 (3) (690 SE2d 811) (2010). And the forensic anthropologist who assisted the medical examiner testified that these photographs showed different injuries that were identified only upon examining the exposed skull. Moreover, this evidence corroborated Simpson's statements that he repeatedly struck Wyscaver in the head. Consequently, the trial court did not abuse its discretion when it admitted the post-autopsy photographs. See McKibbins, 293 Ga. at 852-853 (5); Carr v. State, 265 Ga. 477 (1) (457 SE2d 559) (1995) (photograph of the victim's skull demonstrated material facts concerning the cause of death, blunt head trauma, and was admissible to assist the pathologist in describing the cause of death). See also Spears v. State, 296 Ga. 598, 612 (10) (769 SE2d 337) (2015); Bunnell v. State, 292 Ga. 253, 258 (5) (735 SE2d 281) (2013).

3. Simpson next claims that three of the trial court's jury charges were improper under the evidence. But he objected to one of those charges only at the charge conference. See OCGA § 17-8-58 (a). See also Merritt v. State, 292 Ga. 327, 330 (2) (737 SE2d 673) (2013). And Simpson failed to object to another charge on the specific ground that he now raises on appeal. See OCGA § 17-8-58 (a). See also Woodard v. State, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015); Colzie v. State, 289 Ga. 120, 124-125 (4) (710 SE2d 115) (2011). Accordingly, appellate review of each of these two charges is available only to the extent that the giving of the charge constituted plain error affecting the substantial rights of the parties. See Woodard, 296 Ga. at 806 (2); Merritt, 292 Ga. at 330 (2). Yet Simpson has not explained how either charge lacks evidentiary support, much less how it satisfies the "plain error" standard. See State v. Kelly, 290 Ga. 29, 32 (1), n. 2 (718 SE2d 232) (2011) ("parties should be advised that the hurdle to establishing plain error is high . . . , and therefore that the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that their claims in this regard will be rejected").

Nevertheless, we have reviewed the charges in light of the record, and we conclude that the evidence supported both of the charges that are subject to

6

"plain error" review. One of these charges is the pattern instruction on causation in a homicide case and has been approved by this Court. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.60 (4th ed. 2007, updated through July 2015); Milford v. State, 291 Ga. 347, 350 (3) (d) (729 SE2d 352) (2012); Green v. State, 266 Ga. 758, 759-760 (2) (b) (470 SE2d 884) (1996). That charge finds an evidentiary basis in Simpson's own statement admitting that he used multiple weapons to inflict head injuries on Wyscaver, as well as the evidence that blunt head trauma consistent with use of those weapons caused his death. See Brady v. State, 159 Ga. App. 389, 390 (2) (283 SE2d 617) (1981). The other charge that we review for plain error is the pattern instruction on the use of excessive or unlawful force while acting in self-defense and also has been approved by this Court. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.16.20 (4th ed. 2007, updated through July 2015); Welbon v. State, 278 Ga. 312, 313 (3) (602 SE2d 610) (2004). This charge was supported by the assertion of a justification defense at trial, as well as the evidence that Simpson severely beat Wyscaver in the head with a variety of weapons in response to a single inappropriate nonviolent touching and suggestive remark. Accordingly, neither of these jury charges amounts to plain error.

Simpson did preserve his objection to the portion of the charge on voluntary manslaughter that reads as follows: "If there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, which the jury in all cases shall decide, the killing may be attributed to revenge and be punished as for murder." This charge is an optional part of the pattern instruction on voluntary manslaughter and has been approved by this Court. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.10.41 (4th ed. 2007, updated through July 2015); Barron v. State, 261 Ga. 814, 815-816 (3) (411 SE2d 494) (1992). Although Simpson does not explain on appeal how this charge lacks evidentiary support, he specifically asserted in the trial court that the State presented no evidence of an interval between the provocation and killing. The trial court indicated that the interval could be short and was a jury question in light of the evidence that Simpson kept changing weapons when Wyscaver was already on the ground and Simpson had the option to stop. Regardless, the language of this pattern instruction is an integral part of our voluntary manslaughter statute, OCGA § 16-5-2 (a), and its inclusion in the voluntary manslaughter charge is no cause for a new trial in the face of a contention that there was insufficient evidence of an interval between

8

the alleged provocation and the homicide. <u>Anderson v. State</u>, 196 Ga. 468 (4) (26 SE2d 755) (1943).

4. Finally, Simpson contends that he was denied the effective assistance of counsel because his trial lawyer failed to preserve and use a peremptory strike on a juror who was employed by the sheriff of a neighboring county. To prevail on his claim of ineffective assistance, Simpson must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. <u>Strickland v. Washington</u>, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Simpson must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Simpson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U. S. at 694 (III) (B). See also <u>Williams v. Taylor</u>,

9

529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one. See Kimmelman, 477 U. S. at 382 (II) (C). See also Muse v. State, 293 Ga. 647, 650 (2) (748 SE2d 904) (2013). We conclude that Simpson has failed to carry his burden.

"Which, and how many, prospective jurors to strike is a quintessential strategic decision." Shields v. State, 307 Ga. App. 830, 832 (1) (a) (706 SE2d 187) (2011). The juror who Simpson claims should have been stricken was the thirtieth prospective juror in the jury array. He was a detention officer with the Catoosa County Sheriff's Office but was not subject to a strike for cause. See Prince v. State, 277 Ga. 230, 235 (3) (587 SE2d 637) (2003). At the hearing on the motion for new trial, Simpson's trial lawyer testified that he should have reserved a strike for that juror because, "in retrospect looking back," the "negatives" of the prospective jurors whom he did strike were not as negative as permitting this detention officer to serve on the jury. But "hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." Shaw v. State, 292 Ga. 871, 876 (3) (a) (742 SE2d 707) (2013). See also Strickland, 466 U. S. at 689 (II).

10

Although the lawyer at one point in his testimony rejected a characterization of his use of peremptory strikes as strategic, an examination of his entire testimony shows that his decisions about which prospective jurors to accept (and which to strike) were, in fact, strategic. See Shields, 307 Ga. App. at 832 (1) (a); Stephens v. State, 224 Ga. App. 184, 186 (3) (480 SE2d 235) (1997). He described his decision not to save a strike as a "judgment call" and not the "better choice," and he testified that this was the first time that he could recall actually reaching the thirtieth prospective juror before filling the jury. Furthermore, Simpson's trial lawyer admitted that he had valid reasons for the nine strikes that he did make. We cannot say under the circumstances of this case that no competent attorney would have struck the jury as this lawyer did. See Barmore v. State, 323 Ga. App. 377, 381 (2) (746 SE2d 289) (2013). Consequently, Simpson has not demonstrated deficient performance with respect to the selection of a jury.

Moreover, Simpson has failed to demonstrate a reasonable probability that the allegedly deficient performance of his trial lawyer changed the outcome of the trial. Simpson has not raised even the slightest possibility that the juror at issue was not qualified, and Simpson has made no showing that the juror harbored any prejudice toward Simpson or was disinclined to acquit him based

11

on reasons other than the arguments and evidence presented at trial. See <u>Eason</u> <u>v. State</u>, 331 Ga. App. 59, 67 (4) (c) (769 SE2d 772) (2015). And there is no indication that any of the prospective jurors who were stricken by Simpson's lawyer were more favorably inclined toward his case than the juror at issue who actually was selected. See <u>Shields</u>, 307 Ga. App. at 837 (1) (b). Accordingly, even assuming deficient performance, reversal is not required because Simpson has not affirmatively shown that he was prejudiced by his lawyer's failure to reserve a peremptory strike and use it on the juror at issue. See <u>Eason</u>, 331 Ga. App. at 67 (4) (c); <u>Shields</u>, 307 Ga. App. at 837 (1) (b).

5. As noted in footnote 1, the trial court sentenced Simpson both for felony murder and for aggravated assault. The indictment charged Simpson with felony murder by causing the death of Wyscaver "while in the commission of aggravated assault . . . by striking him about the head with a board, a computer tower and a computer monitor, deadly weapons in the way and manner used." The aggravated assault count charged Simpson with assaulting Wyscaver "with a board, a computer tower and a computer monitor, deadly weapons in the way and manner used, by striking him about the head with these weapons."

12

"When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction." Culpepper v. State, 289 Ga. 736, 737 (2) (715 SE2d 155) (2011) (citation omitted). See also OCGA § 16-1-7 (a) (1) (prohibiting conviction of more than one crime if one crime is included in another); Jones v. State, 292 Ga. 593, 595 (1) (740 SE2d 147) (2013). Neither the indictment nor the trial court's charge to the jury specified that Simpson was being tried for two distinct aggravated assaults, and so we cannot conclude that the jury found him guilty of one aggravated assault to support the felony murder conviction and of a separate aggravated assault to support the independent aggravated assault conviction. See Sears v. State, 292 Ga. 64, 73 (6) (734 SE2d 345) (2012); Green v. State, 283 Ga. 126, 130 (2) (657 SE2d 221) (2008). As a result, Simpson's conviction and sentence for aggravated assault must be vacated because it merged with the conviction for felony murder. See Sears, 292 Ga. at 73-74 (6); Hulett v. State, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014) ("if we notice a merger issue in a direct appeal, as we have here, we regularly resolve that issue, even

where it was not raised in the trial court and is not enumerated as error on appeal") (citation and punctuation omitted).

Judgment affirmed in part and vacated in part. All the Justices concur.


Decided January 19, 2016.

Murder. Walker Superior Court. Before Judge Van Pelt.

Kenneth W. Sheppard, for appellant.

Herbert E. Franklin, Jr., District Attorney, Elizabeth O. Evans, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.